IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MICHAEL WILLIAMS,<br><br>                  Petitioner,<br><br>vs.<br><br>J. LAMANNA, Superintendent, Greene Haven Correctional Facility,<br><br>                  Respondent. | No. 9:19-cv-00308-JKS<br><br>MEMORANDUM DECISION |

       Michael Williams, a New York state prisoner proceeding *pro se*, filed a Petition for a Writ of Habeas Corpus with this Court pursuant to 28 U.S.C. § 2254.  Williams is in the custody of the New York State Department of Corrections and Community Supervision ("DOCCS") and incarcerated at Green Haven Correctional Facility.  Respondent has answered the Petition, and Williams has replied.

I. BACKGROUND/PRIOR PROCEEDINGS

       On March 23, 2012, Williams, along with 51 others, was charged with conspiracy in a 261-count indictment that was the result of a large-scale wiretap and surveillance investigation into cocaine and heroin trafficking in and around Albany.  The indictment alleged that, from September 19, 2011, until February 3, 2012, Williams conspired with others to obtain cocaine and heroin and then sell those drugs in Albany county and elsewhere.  The indictment also charged Williams with 25 substantive counts of controlled substances offenses of varying degrees, and further charged that Williams was operating as a major drug trafficker.

Prior to trial, Williams challenged the propriety of an eavesdropping warrant authorizing the monitoring of three phones associated with Williams. Williams further argued that the prosecution had not presented the grand jury legally sufficient evidence to warrant the indictment. The county court concluded that the warrant application that had been utilized in the investigation was legally sound and that legally sufficient evidence had been presented to the grand jury.

Williams was tried jointly with five co-defendants in a trial that lasted from February 25 to May 20, 2013. During its case-in-chief, the prosecution played for the jury hundreds of recorded phone calls between Williams and his co-defendants, as well as text messages between them, which were obtained pursuant to the eavesdropping warrant. Numerous law enforcement witnesses also testified as to their physical surveillance of the defendants, as did cooperating witnesses who bought drugs from and sold drug to the defendants. At the close of the People's case, Williams sought a trial order of dismissal on the ground that the evidence was legally insufficient as to all counts against him. The trial court granted the motion as to Counts 189, 211, 212, and 213, and reserved decision as to Count 187, as to which the jury was eventually hung and the count dismissed, and Count 258, as to which the jury acquitted. The court denied the motion as to all other counts.

In his defense, Williams presented two law enforcement witnesses who had also testified on behalf of the People. At the conclusion of trial, the jury found Williams guilty of: second-degree conspiracy (Count 1); two counts of second-degree criminal sale of a controlled substance (Counts 199, 206); seven counts of third-degree criminal sale of a controlled substance (Counts 196, 197, 198, 201, 203, 207, and 208); six counts of third-degree criminal possession of

a controlled substance (Counts 176, 191, 192, 249, 251, and 261); and fourth-degree criminal possession of a controlled substance (Count 250).  As previously noted, the jury could not agree on one count of first-degree attempted criminal possession of a controlled substance (Count 187) and found Williams not guilty of first-degree criminal sale of a controlled substance (Count 194) and operating as a major trafficker (Count 258).  The trial court subsequently sentenced Williams as a non-violent predicate offender to an aggregate term of 108 years' imprisonment, with various terms of post-release supervision.

Through counsel, Williams appealed his conviction, arguing that: 1) the county court should have dismissed Counts 176, 191, and 192 because the factual allegations set forth in the indictment did not support the charges; 2) Counts 1, 176, 191-199, 201, 203, 206-208, and 250 were not supported by legally sufficient evidence, and the guilty verdict was against the weight of the evidence; 3) numerous counts of the indictment were duplicitous; 4) the trial court erred in denying his request to provide the jury with a multiple conspiracies charge; 5) Albany County was not the proper venue; and 6) his sentence was harsh and excessive.  The Appellate Division of the New York Supreme Court issued a reasoned opinion rejecting most of Williams' claims, but agreeing that his sentence, although legally permissible, should be reduced in the interests of justice.  *People v. Williams*, 53 N.Y.S.3d 716, 722 (N.Y. App. Div. 2017).  The appellate court therefore modified the judgment such that Williams' sentence was reduced to an aggregate prison term of 39 years, to be followed by 5 years of post-release supervision.  *Id.*  Williams sought leave to appeal to the New York Court of Appeals on all claims unsuccessfully raised to the Appellate Division.  The Court of Appeals summarily denied leave on October 5, 2017.  *People v. Williams*, 89 N.E.3d 1266, 1266 (N.Y. 2017).

Williams then filed in the Appellate Division a *pro se* motion for *coram nobis* relief, arguing that appellate counsel was ineffective because he did not effectively raise the insufficiency of the evidence arguments relating to three counts.  The Appellate Division denied the motion without comment, and the Court of Appeals denied leave to appeal that decision. *People v. Williams*, 123 N.E.3d 821, 821 (N.Y. 2019).

While his *coram nobis* motion was pending, Williams timely filed the instant *pro se* Petition for a Writ of Habeas Corpus to this Court on February 28, 2019.  Docket No. 1 ("Petition"); *see* 28 U.S.C. § 2244(d)(1)(A).  Briefing is now complete, and the Petition is before the undersigned judge for adjudication.

## II. GROUNDS RAISED

In his *pro se* Petition before this Court, Williams challenges the legal sufficiency of evidence relating to Counts 196, 199, and 206.[1]

## III. STANDARD OF REVIEW

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254(d), this Court cannot grant relief unless the decision of the state court was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," § 2254(d)(1), or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," § 2254(d)(2).  A state-court decision is contrary to federal law if the state court applies a rule that

---

[1] This Court, through a previously-assigned judge, requested clarification as to the claims Williams was asserting in the petition, and presented him the opportunity to finish exhausting claims raised in the *coram nobis* application.  Docket No. 3.  In response, Williams confirmed that he was asserting only those claims raised in the Petition.

contradicts controlling Supreme Court authority or "if the state court confronts a set of facts that are materially indistinguishable from a decision" of the Supreme Court, but nevertheless arrives at a different result. *Williams v. Taylor*, 529 U.S. 362, 406 (2000). The term unreasonable is a common term in the legal world. The Supreme Court has cautioned, however, that the range of reasonable judgments may depend in part on the nature of the relevant rule argued to be clearly established federal law. *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004) ("[E]valuating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations.").

To the extent that the Petition raises issues of the proper application of state law, they are beyond the purview of this Court in a federal habeas proceeding. *See Swarthout v. Cooke*, 131 S. Ct. 859, 863 (2011) (per curiam) (holding that it is of no federal concern whether state law was correctly applied). It is a fundamental precept of dual federalism that the states possess primary authority for defining and enforcing the criminal law. *See, e.g.*, *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) (a federal habeas court cannot reexamine a state court's interpretation and application of state law); *Walton v. Arizona,* 497 U.S. 639, 653 (1990) (presuming that the state court knew and correctly applied state law), *overruled on other grounds by Ring v. Arizona*, 536 U.S. 584 (2002).

In applying these standards on habeas review, this Court reviews the "last reasoned decision" by the state court. *Ylst v. Nunnemaker*, 501 U.S. 797, 804 (1991); *Jones v. Stinson*, 229 F.3d 112, 118 (2d Cir. 2000). Where there is no reasoned decision of the state court addressing the ground or grounds raised on the merits and no independent state grounds exist for

not addressing those grounds, this Court must decide the issues de novo on the record before it. *See Dolphy v. Mantello*, 552 F.3d 236, 239-40 (2d Cir. 2009) (citing *Spears v. Greiner*, 459 F.3d 200, 203 (2d Cir. 2006)); *cf. Wiggins v. Smith*, 539 U.S. 510, 530-31 (2003) (applying a de novo standard to a federal claim not reached by the state court). In so doing, the Court presumes that the state court decided the claim on the merits and the decision rested on federal grounds. *See Coleman v. Thompson*, 501 U.S. 722, 740 (1991); *Harris v. Reed*, 489 U.S. 255, 263 (1989); *see also Jimenez v. Walker*, 458 F.3d 130, 140 (2d Cir. 2006) (explaining the *Harris-Coleman* interplay); *Fama v. Comm'r of Corr. Servs.*, 235 F.3d 804, 810-11 (2d Cir. 2000) (same). This Court gives the presumed decision of the state court the same AEDPA deference that it would give a reasoned decision of the state court. *Harrington v. Richter*, 131 S. Ct. 770, 784-85 (2011) (rejecting the argument that a summary disposition was not entitled to § 2254(d) deference); *Jimenez*, 458 F.3d at 145-46. Under the AEDPA, the state court's findings of fact are presumed to be correct unless the petitioner rebuts this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

## IV. DISCUSSION

Williams challenges the legal sufficiency of the evidence presented in support of Counts 196, 199, and 206, three counts relating to the criminal sale of a controlled substance. As articulated by the Supreme Court in *Jackson*, the constitutional standard for sufficiency of the evidence is whether, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in the original); *see McDaniel v. Brown*, 558 U.S. 120, 132-33 (2010) (reaffirming this standard). This Court must

therefore determine whether the New York court unreasonably applied *Jackson*.  In making this determination, this Court may not usurp the role of the finder of fact by considering how it would have resolved any conflicts in the evidence, made the inferences, or considered the evidence at trial.  *Jackson*, 443 U.S. at 318-19.  Rather, when "faced with a record of historical facts that supports conflicting inferences," this Court "must presume–even if it does not affirmatively appear in the record–that the trier of fact resolved any such conflicts in favor of the prosecution, and defer to that resolution."  *Id.* at 326.

It is a fundamental precept of dual federalism that the States possess primary authority for defining and enforcing the criminal law.  *See Engle v. Isaac*, 456 U.S. 107, 128 (1982).  Consequently, although the sufficiency of the evidence review by this Court is grounded in the Fourteenth Amendment, it must take its inquiry by reference to the elements of the crime as set forth in state law.  *Jackson*, 443 U.S. at 324 n.16.  A fundamental principle of our federal system is "that a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus."  *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005); *see West v. AT&T*, 311 U.S. 223, 236 (1940) ("[T]he highest court of the state is the final arbiter of what is state law.  When it has spoken, its pronouncement is to be accepted by federal courts as defining state law . . . .").  "Federal courts hold no supervisory authority over state judicial proceedings and may intervene only to correct wrongs of constitutional dimension."  *Sanchez-Llamas v. Oregon*, 548 U.S. 331, 345 (2006) (quoting *Smith v. Philips*, 455 U.S. 209, 221 (1982)) (internal quotation marks omitted).

In support of his claim, Williams argues that the convictions on Counts 196, 199, and 206 were not supported by legally sufficient evidence because they were based on generic texts or

conversations, or in coded language. The record reflects that Investigator Dennis Guiry testified as to the meaning of the coded language. According to Williams because the People failed to recover or produce any drugs actually possessed or sold by Williams, the evidence did not establish his possession and sale of drugs as to those counts, and Guiry's testimony was insufficient to provide such connection. But this Court is precluded from either re-weighing the evidence or assessing the credibility of witnesses. *See Maldonado v. Scully*, 86 F.3d 32, 35 (2d Cir. 1996) (dismissing habeas claim because "assessments of the weight of the evidence or the credibility of witnesses are for the jury and not grounds for reversal on appeal" and deferring to the jury's assessments of the particular weight to be accorded to the evidence and the credibility of witnesses). Under *Jackson*, this Court's role is simply to determine whether there is any evidence, if accepted as credible by the trier of fact, sufficient to sustain conviction. *See Schlup v. Delo*, 513 U.S. 298, 330 (1995).

As the Appellate Division explained when rejecting this claim on direct appeal:

> Dennis Guiry, an investigator with extensive experience with gang and narcotics investigations and the use of dialogue disguised for drug dealings, testified that he was the case officer for this investigation and, in that capacity, he listened to "hundreds" of wire-tapped phone calls. Guiry testified that he has had numerous prior dealings with [Williams] and that he was familiar with [Williams'] voice from those dealings, as well as from listening to [Williams'] voice in approximately 50 to 100 of the intercepted phone calls. In connection with Guiry's testimony, the relevant phone calls were played to the jury and the jury was provided with transcripts of the conversations and text messages to aid them when they were listening to the calls. After a call was played, in most instances, Guiry provided his opinion as to the terms used and the true nature of the conversations. For example, Guiry testified that, in a series of calls on January 10, 2012, [Williams] can be heard discussing the difficulties that he was having cooking powder cocaine into crack cocaine and, at one point, defendant stated that he "went and grabbed a dollar more." Although that statement was seemingly innocuous, Guiry testified that [Williams] was actually referencing his purchase of 100 grams of cocaine. In addition to the proof regarding the specific occasions on which defendant possessed or offered to sell drugs, the People also introduced intercepted phone calls between [Williams] and certain coconspirators, including codefendant Guy Anderson, in which they discussed, among

other things, cooking cocaine and gathering money to enable Anderson to purchase drugs from a dealer in New York City.  Moreover, a witness testified that, during the alleged conspiracy period, she purchased heroin from defendant "four or five hundred times." Further, when [Williams] was arrested at his residence in February 2012, a large amount of cocaine and crack cocaine was discovered, as well as a digital scale, one of the phones that was a target of the eavesdropping warrant and a glass jar containing crack cocaine residue.[FN3]

> FN3.  The drugs found in [Williams'] residence formed the basis for counts 249, 250, 251 and 261.  [Williams] does not challenge the legal sufficiency or weight of the evidence as to these charges.

After viewing all of the foregoing proof in the light most favorable to the People, and notwithstanding the fact that no drugs were recovered on any occasion other than when defendant was arrested, we are satisfied that legally sufficient evidence was adduced in the form of, among other proof, the extensive phone records and Guiry's explanatory testimony.

*Williams*, 53 N.Y.S.3d at 720.

Although it might have been possible to draw a different inference from the evidence, this Court is required to resolve that conflict in favor of the prosecution.  *See Jackson*, 443 U.S. at 326.  Williams bears the burden of establishing by clear and convincing evidence that these factual findings were erroneous.  28 U.S.C. § 2254(e)(1).  He has failed to carry such burden. For the reasons discussed in the Appellate Division's thoughtful analysis, the record does not compel the conclusion that no rational trier of fact could have found proof that Williams was guilty of the drug offenses alleged in Counts 196, 199, and 206, especially considering the double deference owed under *Jackson* and the AEDPA.  Williams is therefore not entitled to relief.

## V. CONCLUSION

Williams is not entitled to relief on any ground raised in his Petition.

**IT IS THEREFORE ORDERED THAT** the Petition under 28 U.S.C. § 2254 for a Writ of Habeas Corpus is **DENIED**.

**IT IS FURTHER ORDERED THAT** the Court declines to issue a Certificate of Appealability. 28 U.S.C. § 2253(c); *Banks v. Dretke,* 540 U.S. 668, 705 (2004) ("To obtain a certificate of appealability, a prisoner must 'demonstrat[e] that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further.'" (quoting *Miller-El*, 537 U.S. at 327)). Any further request for a Certificate of Appealability must be addressed to the Court of Appeals. *See* FED. R. APP. P. 22(b); 2D CIR. R. 22.1.

The Clerk of the Court is to enter judgment accordingly.

Dated: July 8, 2020.

/s/ James K. Singleton, Jr.<br>
JAMES K. SINGLETON, JR.<br>
Senior United States District Judge